**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

The Board of Education of
the Springfield City School
District,

        *Plaintiff*,

v.

Computer Automation
Systems, Inc., et al.,

        *Defendants.*

Case No.: 3:17-cv-330
Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING DEFENDANT HBH TECHNOLOGY MOTION TO JOIN TTCO'S MOTION WITH REGARD TO COUNTS II, III, AND IV OF THE COMPLAINT, ECF 12, AND DENYING MOTION OF TTCO HOLDING COMPANY, INC. D/B/A SEAS EDUCATION, INC. FOR JUDGMENT ON THE PLEADINGS, ECF 9**.

---

Pending before the Court is Motion of TTCO Holding Company, Inc. D/B/A SEAS Education, Inc. for Judgment on the Pleadings. ECF 9.[1] Because the complaint alleges facts which, if proven, would state a claim, and because the documents attached to Defendants' answer are not in evidence, the Court will deny the motion.

**I.    Background**

Plaintiff, the Board of Education of the Springfield City School District is a public city school district that provides its students with special education services. (Complaint [Doc. 2], ¶¶ 1,6). Plaintiff's education services are eligible for Medicaid reimbursement from the Ohio

---

[1] Defendant HBH Technology filed a motion under the caption "Notice," to join TTCO's motion with regard to Counts II, III, and IV of the complaint. ECF 12. That motion is **GRANTED**, even though it fails to comply with local rules for filing motions.

Department of Medicaid if the regulatory and administrative requirements of the Ohio Medicaid School Program are met. (Id. at ¶¶ 6-7). Plaintiff entered into a service agreement with Defendant HBH Technology, Inc., which was then known as Computer Automation Systems, Inc., whereby Computer Automation Systems agreed to provide "a comprehensive School Medicaid Direct Service comprised of many specialty services such as training, consultation, claims processing, statistical reporting and audit preparation services delivered by Computer Automation Systems Education, Medicaid and Software personnel." (Compl. ¶ 16.) The agreement remained in effect from 2009 to 2016. (Compl. ¶ 17.).

Computer Automation Systems submitted Medicaid claims to the Ohio Department of Medicaid from October 1, 2008 through June 30, 2013 on behalf of Plaintiff. (Compl. ¶ 26.) Those claims, with a value of $912,328.45, were rejected by the Ohio Department of Medicaid in November 2015. (Compl. ¶ 31.) Computer Automation Systems or its successor in interest continued to submit Medicaid claims on behalf of Plaintiff and to provide other services to Plaintiff after June 30, 2013. (Compl. ¶ 33.)

Plaintiff alleges that Computer Automation Systems or its successor in interest breached the Agreement. The breaches are alleged to have begun early in the relationship, with Computer Automation Systems: "fail[ing] to comply with [its] obligation to train, consult, advise and provide technical assistance to Plaintiff to ensure all Medicaid reimbursements were properly prepared, documented, and submitted and not subject to recoupment." (Compl. ¶ 36.) Plaintiff alleges the breaches continued even after rejection of the claims by Ohio Department of Medicaid in November 2015, when Computer Automation Systems or its successor in interest: "fail[ed] to provide proper reporting and auditing support as contemplated by the Agreement and [failed] to

research denials, update claims, and resubmit claims on behalf of Plaintiff as required by [Section IV] of the Agreement." (Compl. ¶ 37.)

Defendant TTCO asserts that it acquired the assets of Computer Automation Systems, including the agreement with Plaintiff, as part of a UCC foreclosure sale on May 29, 2014. (TTCO Mot., p. 4-5.) On June 25, 2010, Computer Automation Systems obtained a loan from Arvest Bank, and pledged its assets as collateral. (TTCO Answer [Doc. 5], Ex. A). According to TTCO, on May 29, 2014, Arvest assigned Computer Automation Systems' debt to TTCO, and Computer Automation Systems tendered its assets to TTCO in exchange for forgiveness of the debt by execution of a Proposal and Agreement with Respect to Acceptance of Certain Collateral Pursuant to Section 9-620 of the UCC. (Id.). ATTCI also asserts that on May 29, 2014 and as part of the Asset Purchase Agreement, Computer Automation Systems assigned the agreement with Springfield schools to TTCO by execution of a Bill of Sale and Assignment. (Id. at Ex. B). TTCO asserts it did not assume, and has not assumed, any liabilities of Computer Automation Systems by way of the Asset Purchase Agreement or Assignment, (Id. at Exs. A & B, generally), even the ones related to the contract of which it assumed performance.

Computer Automation Systems changed its name to HBH Technology, Inc. following TTCO's asset acquisition of Computer Automation Systems. [Doc. 8]. TTCO acknowledges, however, that it took on the role of Plaintiff's Medicaid reimbursement administrator/consultant – i.e., "TTCO began providing Plaintiff with Medicaid reimbursement services" – on or about the date of the alleged sale, (Id. at 3), and continued using the same name.

In November 2015, Plaintiff received notice from the Ohio Department of Medicaid that Medicaid reimbursement claims submitted by Plaintiff from October 1, 2008 through June 30,

2013, valued at $912,328.45, were allegedly not compliant with the Medicaid Program and therefore subject to recoupment. (Id. at ¶ 31) (emphasis added). Plaintiff blames both Defendants for the alleged compliance issues. (Id. at ¶ 32). Plaintiff further alleges that it submitted additional Medicaid claims for reimbursement to the Ohio Department of Medicaid after June 30, 2013, "which may not have been compliant" with the Medicaid Program, but have not been challenged by the Ohio Department of Medicaid as subject to recoupment. (Id. at ¶ 33)

On August 18, 2017, Plaintiff The Board of Education of the Springfield School District filed a complaint against Defendants in the Court of Common Pleas, Clark County, Ohio. ECF 1. On September 21, 2017, Defendants removed the action to this Court, asserting diversity. ECF 1. On November 3, 2017, TTCO filed the motion under review. Defendant HBH Technology joined TTCO's motion with regard to Counts II, III, and IV of the complaint. ECF 12.

## II. Standard of Review

Federal Rules of Civil Procedure provide that, "after the pleadings are closed but within such time as not to delay the trial any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as is applied to a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A court grants a motion under Rule 12(c) when the movant has clearly established that there remains no genuine issue of material fact, and that, as a matter of law, the movant is entitled to judgment. *JP Morgan Chase, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

When ruling on such a motion, a court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving

4

party. *Delaware River Port Authority v. Home Ins. Co.*, 1993 U.S. Dist. LEXIS 6749, at *3 (E.D. Pa. 1993). As such, the court must take as true the allegations of the pleadings of the non-movant; conversely, "all contravening assertions in the movant's pleadings are taken to be false." *Melton v. Bd. of Cnty. Comm'rs of Hamilton Cnty., Ohio*, 267 F. Supp. 2d 859, 862 (S.D. Ohio 2003). Yet, a "court need not accept as true [the non-movant's] legal conclusions or unwarranted factual inferences." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). Judgment on the pleadings is appropriate when "the plaintiff can undoubtedly prove no set of facts in support of the claims that would entitle relief." *E.E.O.C v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); see also *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In ruling on a motion to dismiss, a court can consider: (1) any documents attached, incorporated by or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009); *New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); see also Fed. R. Civ. P. 10(c). "This includes public records and government documents available from reliable sources on the Internet." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (citations omitted).

### III.  Analysis

"[A]n intervening foreclosure sale affords an acquiring corporation no automatic exemption from successor liability." *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 124

F.3d 252 (1st Cir. 1997) (rejecting the contention that, as a matter of law, acquisition of assets through a UCC foreclosure sale warrants dismissal of a claim against the successor). See also *Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp.*, 846 F.3d 1, 16 (2d Cir. 2016) (explaining "where creditors foreclose on a debtor's collateral and sell the collateral to a new entity meant to carry on the business, the debtor's other creditors may be able to sue the new entity under State law theories of successor liability or fraudulent conveyance").

The parties agree that under Ohio law, an acquiring company may be liable for the contractual liabilities of its predecessor if: (1) the purchaser expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is entered into fraudulently for the purpose of escaping liability. *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, syllabus (1993).

Most of the facts bearing on the liability or non-liability of TTCO as a successor-in-interest of Computer Automation Systems, under the test set forth in *Welco*, are within Defendants' control. "Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." *Opportunity Fund, LLC v. Epitome Sys.*, 912 F. Supp. 2d 531, 543 (S.D. Ohio 2012) (denying the motion of an alleged successor-in-interest to dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6)).

TTCO would have the Court accept as true all of the facts it alleges in its answer, drawing facts from the documents attached thereto. This, however, is not the standard applied at this stage of litigation. TTCO's Motion for Judgment on the Pleadings relies on extrinsic evidence. The unauthenticated and redacted documents attached to TTCO's answer are neither mentioned in, nor

attached to, Plaintiff's complaint and they cannot be considered at this stage in the proceedings. See *Waters v. Drake*, 105 F.Supp.3d 780, 789 (S.D. Ohio 2015) (Graham, J.).

TTCO asks the Court to accept as true the factual assertions in its exhibits and motion regarding its alleged acquisition of the Computer Automation Systems assets, including: the fact of the alleged acquisition; the date of the alleged acquisition; the consideration for the alleged acquisition; and the intent of the parties to the alleged acquisition. (See Mot. at 4-5, 8). While Plaintiff's well-pleaded allegations must be taken as true for purposes of resolving a Motion for Judgment on the Pleadings, the allegations of TTCO, as the moving party, are not entitled to a presumption of truth. The Court cannot rule as to successor liability without considering extrinsic evidence and, accordingly, TTCO's Motion will be denied.

Plaintiff's Complaint alleges that TTCO is a successor-in-interest of Computer Automation Systems "with respect to its liabilities and obligations" (Compl. ¶ 3.). The Complaint does not attempt, however, to distinguish which Medicaid reimbursement services (between 2009 and 2016) were provided by Computer Automation Systems and which services were provided by TTCO. Plaintiff alleges that from its perspective, Computer Automation Systems and TTCO were indistinguishable. Both before and after the alleged foreclosure sale, Plaintiff received services from, and made payments to, an entity that did business as "Computer Automation Services." The Complaint alleges that Computer Automation Systems and TTCO collectively provided the defective services, received the unearned payments, and breached the Agreement. (See Compl. ¶ 3).

Through discovery, Plaintiff expects to ascertain: when and how TTCO acquired the assets of Computer Automation Systems; whether the terms of the acquisition were commercially

reasonable; how TTCO and Computer Automation Systems allocated their rights and obligations with respect to services provided to Plaintiff; when TTCO began conducting business as "Computer Automation Systems"; whether TTCO is operated by the former owner of Computer Automation Systems, Harvey Hughes; whether Computer Automation Systems and TTCO have common ownership; whether TTCO continues to operate with the same staff, and in the same offices, as Computer Automation Systems; whether Computer Automation Systems or TTCO accepted payments Plaintiff made after the alleged acquisition; whether Computer Automation Systems or TTCO had the knowledge, competence, and skill to provide Medicaid reimbursement services to Plaintiff; and why TTCO failed to provide follow-up services such as auditing and resubmission after Plaintiff's Medicaid claims were denied by Ohio Department of Medicaid.

Additionally, the complaint asserts, as alternatives to its claim for breach of contract, claims for unjust enrichment, negligence, and fraud. Civil Rule 8(d) authorizes a plaintiff to plead alternative and inconsistent claims for relief in his complaint. See, e.g., *Teknol, Inc. v. Buechel*, 1999 U.S. Dist. LEXIS 22017, *8 (S.D. Ohio) (explaining that "a plaintiff may set forth both [breach of contract and unjust enrichment] in his Complaint, as alternative theories, in accordance with Fed. R. Civ. P. 8[d](2)"); *Lunkenheimer Co. v. Pentair Flow Control Pacificpty*, 2014 U.S. Dist. LEXIS 126395, *38 (S.D. Ohio) (explaining that "[t]he law . . . permits a plaintiff to plead fraud as an alternative theory to a breach of contract count"); Restatement 2d of Torts, (explaining that a person who is supplied with misinformation by a professional service firm may maintain "at his election either a right of action [for negligence] or a right of action upon the contract under which the information is supplied"). Civil Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

Although Rule 9(b) provides that a party must state the circumstances constituting fraud or mistake "with particularity," the objective of the rule is merely to ensure that the defendant has sufficient notice to respond in his answer. "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct. The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud." *Llewellyn-Jones v. Metro Prop. Group, LLC*, 22 F. Supp. 3d 760, 781 (internal citations and quotation marks omitted).

Plaintiff, in its complaint, alleges that Defendants misrepresented in their marketing materials their level of knowledge, competency and skill with respect to the services it provided, and specifically promised "zero risk" to its customers. (Compl. ¶ 10-14.) TTCO asserts, in its Answer and Motion, that these misrepresentations were made, if at all, by Computer Automation Systems and that it is not liable as a successor-in-interest of Computer Automation Systems. The problem is a lack of uncontroverted facts, at this stage, from which the Court can determine the merits of TTCO's contention that it is not liable as a successor-in-interest of Computer Automation Systems. Plaintiff's Complaint properly states alternate claims for relief and, accordingly, those claims will not be dismissed at this stage.

## IV. Conclusion

Because the complaint alleges facts which, if proven, would state a claim, and because the documents attached to Defendants' answer are not in evidence, the Court **DENIES** Motion of TTCO Holding Company, Inc. D/B/A Seas Education, Inc. and HBH Technology for Judgment

on the Pleadings. ECF 9.

**DONE** and **ORDERED** this Monday, September 24, 2018.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE