UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BOARD OF EDUCATION OF THE
SPRINGFIELD CITY SCHOOL DISTRICT,

  Plaintiff,          Case No. 3:17-cv-330

vs.

HBH TECHNOLOGY, INC., *et al*.,    District Judge Michael J. Newman
                    Magistrate Judge Sharon L. Ovington
  Defendants.

_____

**ORDER AND ENTRY: (1) DISMISSING WITH PREJUDICE PLAINTIFF'S UNJUST ENRICHMENT AND FRAUD CLAIMS; (2) GRANTING DEFENDANT TTCO HOLDING COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. 36) ON PLAINTIFF'S REMAINING CLAIMS; (3) ORDERING THE CLERK TO ENTER JUDGMENT ACCORDINGLY; AND (4) TERMINATING THIS CASE ON THE COURT'S DOCKET**

_____

  This civil case is before the Court on the motion for summary judgment filed by Defendant TTCO Holding Company, Inc. ("TTCO"). Doc. 36. Plaintiff Board of Education of the Springfield City School District ("Springfield") filed a memorandum in opposition to TTCO's motion and, thereafter, TTCO filed a reply. Docs. 39, 41. The Court has considered the foregoing, and TTCO's motion is now ripe for decision.

**I.**

  The following facts are undisputed. Springfield is an Ohio public school district that provides special education services to certain students. Doc. 39 at PageID 473. Costs associated with special education services are eligible for reimbursement under the Federal School Medicaid Fee-for-Direct Service Program ("FSS"). *See* 42 U.S.C. § 1396b(c). The Ohio Department of Medicaid ("ODM") administers the FSS through the Ohio Medicaid School Program ("MSP"). *See generally* Ohio Admin. Code §§ 5160-35-01–5160-35-80.

The MSP reimbursement process consists of two parts.  First, school districts (described in this context as providers) submit claims to ODM throughout the school year on which ODM makes interim payments on a rolling basis.  *See* Ohio Admin. Code § 5160-35-04(K)(1).  To ensure ODM only pays for services actually rendered, providers must produce a year-end cost report.  *See* Ohio Admin. Code § 5160-35-04(K)(2).  A cost report requires providers to (1) certify their participation in random-moment-in-time studies; (2) disclose the number of Medicaid students in their district; and (3) identify other administrative and transportation costs.  *See* Ohio Admin. Code § 5160-35-02(F).  The provider is responsible for retaining an "independent certified public accountant (CPA) firm, the state auditor, or other entity authorized to conduct audits in the state of Ohio to perform an agreed upon procedures [("AUP")] review of the cost report and document adjustments to the cost report."  Ohio Admin. Code § 5160-35-04(K)(2).  ODM cost-report guidance requires that an officer of the provider certify the veracity of the information provided in the cost report.  Doc. 36-1 at PageID 368, 373.  Failure to submit a cost report "will result in full repayment by the MSP provider of the total interim payment received by the MSP provider for the cost reporting period."  Ohio Admin. Code § 5160-35-04(K)(4).

ODM uses the cost report to conduct a final cost settlement and reconciliation review.  *See* Ohio Admin. Code § 5160-35-04(K)(4).  This review involves a comparison between the federal financial participation rate identified in the cost report, the amount of interim payment, the number of students for which claims were received, and the total population of covered students.  *See* Ohio Admin. Code § 5160-35-04(K)(4).  If ODM discovers it overpaid a provider during the prior year, ODM will deduct that sum from interim payments made during the next school year.  *See* Ohio Admin. Code § 5160-35-04(K)(4).

This dispute arose from Springfield's dealings with its MSP vendor, Computer Automation Systems, Inc. ("CAS"), between 2008 and 2013. Doc. 2 at PageID 23–26. In April 2008, Springfield entered into a Master Agreement with CAS for its billing and information management software, which set forth the general terms of service between the parties. Doc. 39-2 at PageID 506. On September 1, 2009, Springfield and CAS also entered into a contract entitled "Ohio Medicaid School Program Service Agreement" ("Service Agreement"), wherein CAS agreed to process interim claims on behalf of Springfield. Doc. 39-3 at PageID 517.

In 2014, TTCO and CAS executed an asset purchase agreement. Doc. 36-2 at PageID 424. CAS pledged its assets and assigned its contracts, including the Service Agreement, to TTCO, and TTCO disclaimed CAS's liabilities. *Id.*[1] CAS emerged from the transaction as Defendant HBH Technology, Inc. ("HBH"). Doc. 36-2 at PageID 405–406.[2]

On November 10, 2015, an ODM administrator informed Springfield that it had failed to submit cost reports for 2009, 2010, 2011, 2012, and 2013. Doc. 39-4 at PageID 523. As a result, ODM intended to seek a remittance for all the interim payments it had made to Springfield from 2009–2013, or $912,328.45. *Id.* at PageID 521. Soon thereafter, Springfield terminated its contract with, and filed this lawsuit against, TTCO, alleging it was obligated, but failed, to submit cost reports on its behalf. Doc. 2. TTCO now moves for summary judgment. Doc. 36.

## II.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty*

---

[1] The remainder of this opinion refers to TTCO as the party owing Springfield performance under the Service Agreement. *See* doc. 36-3 at PageID 442–43.
[2] An entry of default was entered against HBH on May 13, 2020. *See* docs. 43, 45.

3

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

### III.

TTCO moves for summary judgment on Springfield's claims for: (A) breach of contract, (B) unjust enrichment, (C) fraud, and (D) negligence. Doc. 36 at PageID 279, 285, 289; *see also* doc. 2 at PageID 26–28. While Springfield opposes TTCO's attack on its contract and negligence claims, it does not address TTCO's summary judgment request on the unjust enrichment and fraud claims. Doc. 39. Accordingly, the Court considers the unjust enrichment and fraud claims abandoned and hereby **DISMISSES** those claims **WITH PREJUDICE**. *See, e.g.*, *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24 (6th Cir. 2003) (concluding that plaintiff abandoned a claim where he "failed to brief the issue before the district court"); *Swann v. Time Warner Entm't Co., L.P.*, 126 F. Supp. 3d 973, 981–82 (S.D. Ohio 2015) (finding the plaintiffs abandoned claims for failing to respond to the defendant's summary judgment arguments). Springfield's contract and negligence claims will be addressed in turn.

### A.

The Court first examines the parties' breach of contract arguments. TTCO contends summary judgment is appropriate for four reasons: (1) that the plain terms of the Service Agreement set forth no requirement for it to prepare cost reports; (2) Springfield never paid for cost report preparation; (3) to the extent any requirement to prepare cost reports exists, Springfield waived TTCO's purported non-compliance; and (4) successor liability does not extend to it for any obligation CAS may have had to prepare costs reports prior to TTCO's acquisition. Doc. 36 at PageID 279–85. The Court finds that the plain terms of the Service Agreement are not ambiguous, and TTCO was not obligated to prepare and submit cost reports. Summary judgment on Springfield's breach of contract claim in TTCO's favor is therefore appropriate. Doc. 36.

"In this diversity action governed by Ohio law, contract interpretation is a question of law for the court." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 826 (6th Cir. 2012). If a contract is found to be clear and unambiguous, then the court must decide its meaning as a matter of law. *See Bd. of Educ. of Toronto City Schs. v. Am. Energy Utica, LLC*, 152 N.E.3d 378, 395 (Ohio Ct. App. 2020). "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *City of Dublin v. Friedman*, 101 N.E.3d 1137, 1148 (Ohio Ct. App. 2017) (quoting *Inland Refuse Transfer Co. v. Browning–Ferris Indus., Inc.*, 474 N.E.2d 271, 273 (Ohio 1984)).

"Ohio law instructs that contracts be interpreted to give effect to the parties' intent." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017). "To discern the parties' intent, courts look to the plain and ordinary meaning of the language used in their agreement." *Id*. "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *City of St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 875 N.E.2d 561, 566 (2007)). Only when contract terms are unclear or ambiguous may a court consider extrinsic evidence to ascertain the parties' intent. *Id*. Ambiguity exists "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Id*. (citations omitted). Where ambiguity truly exists, "the court should generally construe it against the drafter." *Id.*

Springfield's principal argument is that the Service Agreement is unclear and ambiguous and -- with the help of extrinsic evidence -- could be read to obligate TTCO to prepare cost reports. Doc. 39 at PageID 482. Springfield first asserts that the term "comprehensive," as used in the

6

Service Agreement's preamble, is a term of art that includes both interim claim submission and cost reporting.  *Id.* at PageID 484.  The clause in which "comprehensive" appears reads:

> Whereas CAS has developed a *comprehensive* School Medicaid Direct Service (comprised of many specialty services such as training, consultation, claims processing, statistical reporting and audit preparation services delivered by CAS Education, Medicaid and Software personnel)[.]

Doc. 39-3 at PageID 517 (emphasis added).  TTCO, on the other hand, argues "comprehensive" is a non-operative term because it appears in the Service Agreement's preamble and does not set forth any affirmative obligation.  Doc. 41 at PageID 689.  The Court agrees with TTCO.

Preambles to contracts generally lay out the parties' contracting objective "rather than set forth the specific rights and obligations of the parties."  *Cain Rest. Co. v. Carrols Corp.*, 273 F. App'x 430, 434 (6th Cir. 2008).  A whereas clause might clarify the parties' intentions when a contract is ambiguous, but it cannot create any right or duty beyond the operative language of the document.  *See Groen v. Children's Hosp. Med. Ctr.*, 972 N.E.2d 648, 654 (Ohio Ct. App. 2012) (citation omitted) ("[I]n contracts where a preamble . . . is . . . declaratory of the purposes and intentions of the parties, it will be looked to in construing the contract . . . but in no sense will it be the basis of a legal and binding obligation of the parties").  In other words, a preamble cannot create ambiguity in a contract where it otherwise does not exist.  *See, e.g.*, *Cain Rest. Co.*, 273 F. App'x at 433 (citation omitted) ("Rather than ascertaining the disputed term as it appears in the preamble, we 'look[] to the contract as a whole and give[] meaning to all its terms'").

Springfield argues that "comprehensive" refers to the extent of services TTCO agreed to provide under the Service Agreement and that one such service is cost reporting.  Doc. 39 at PageID 484.  But the parties stipulated to the specific services TTCO agreed to furnish to Springfield in Section II of the Service Agreement, which is entitled "Essential Services."  Doc. 39-3 at PageID 517–18.  Section II includes two clauses where we would expect to find the term

7

"cost report" if the parties indeed intended it to be among the services provided by TTCO. One clause states that TTCO "will provide report services [to Springfield] by providing information . . . including . . . the amount of claims paid to date." *Id.* at PageID 518. The other reads, TTCO "will work with [Springfield] to help [Springfield] prepare for occasional/eventual audits by state and/or federal agencies who oversee the Medicaid reimbursement programs in Ohio." *Id.*

Springfield acknowledges that neither clause contains the phrase "cost report." Doc. 39 at PageID 484. Springfield's expert testified that "occasional/eventual audit" does not refer to cost reporting. Doc. 36-6 at PageID 461. Springfield therefore concedes that cost reporting is not among the "essential services" TTCO agreed to provide. Doc. 39 at PageID 484.

Instead, Springfield argues that "comprehensive School Medicaid Direct Service," as set forth in the preamble, refers to a range of services that go above and beyond the explicit terms of Section II. *Id.* at PageID 484–85. To prove this, it points to the testimony of its expert who explains that cost reporting is a customary practice of an Ohio billing agent. *Id.* at PageID 484. Springfield's view is that, notwithstanding the Service Agreement's written terms, TTCO was obligated to prepare cost reports because all billing agents know they should prepare cost reports. *Id.* at PageID 485. But Springfield relies on extrinsic evidence -- in the form of expert testimony describing industry custom -- to create an ambiguity, not to resolve an ambiguity within the contract itself. *Id.* Extrinsic evidence is only relevant to the extent the underlying contract term is ambiguous. *See, e.g.*, *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1008 (6th Cir. 2009) (citation omitted) ("[E]xtrinsic evidence, however, cannot be considered when contract language is unambiguous"). Ambiguity cannot be created by extrinsic evidence. *See, e.g.*, *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003) ("[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, *i.e.*, apparent on the face of the contract"). A

court should only turn to extrinsic evidence to aid in the interpretation of a contract in the event a term can be plausibly construed different ways. *See, e.g.*, *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 893 (6th Cir. 1996). Springfield's argument ignores this settled principle, and the Court will not consider the extrinsic evidence submitted by Springfield to create ambiguity not otherwise evident in the contract.

Springfield also argues that Section IV of the Service Agreement is ambiguous. Doc. 39 at PageID 483. Section IV, entitled "Contract Fee," provides that, "[i]n consideration for the claims processing and reporting services provided by [TTCO] to [Springfield], [Springfield] agrees to pay [TTCO] 10% of the Total Paid Claims indicated on each remittance." Doc. 39-3 at PageID 519. Springfield argues that "claims processing and reporting services" refers to both interim claim submission and cost reporting. Doc. 39 at PageID 484. Had TTCO submitted cost reports, Springfield contends it would have paid TTCO a contingent fee. *Id.* at PageID 485.

TTCO points out that "reporting services," as used in Section IV, cannot take on a different meaning than it does in Section II. Doc. 41 at PageID 692. Section II(G) explains that TTCO "will provide report services by providing information to the [Springfield] including, but not necessarily limited to, the amount of claims paid to date in the school year [and the] amount of claims in process at any time of year." Doc. 39-3 at PageID 518. In TTCO's view, Section IV used "report services" to refer to the interim claims process. Doc. 41 at PageID 692.

The Court finds Section IV to be unambiguous. A court engaged in contract interpretation must be sure to "harmonize all the provisions of the document rather than to produce conflict in them." *Bd. of Educ. Toronto City Schs.*, 152 N.E.3d at 395. This includes presuming that the same words used in different parts of the contract have the same meaning absent countervailing

instruction. *See, e.g.*, *Shutway v. Chesapeake Expl., LLC*, 134 N.E.3d 721, 731 (Ohio Ct. App. 2017).

Cost reporting, as Springfield acknowledges, is a process separate and apart from interim claim processing. Doc. 39 at PageID 475. ODM uses cost reporting as a retrospective reconciliation process to ensure it did not over or under-pay on claims from the prior year. *See* Ohio Admin. Code § 5160-35-04(K)(4). Providers must prepare a cost report consistent with ODM-issued guidelines. *See* Ohio Admin. Code § 5160-35-04(K)(2). ODM explains that a cost report "is designed to capture the actual costs of the provider." Doc. 36-1 at PageID 372. Providers must calculate the number of students in their district covered by Medicaid and identify transportation, payroll, and administrative costs. *Id.* at 376–83. After compiling the cost report, providers must retain an independent auditor to conduct an AUP review of the cost report. *See* Ohio Admin. Code § 5160-35-04(K)(2). Cost reporting is not just an accounting of interim claims, but is something that involves more comprehensive analysis. *See* doc. 39 at PageID 475–77.

Having established that Section II is the sole source of TTCO's ongoing obligations under the Service Agreement, Section IV must be interpreted consistently. Doc. 39-3 at PageID 518. Section II(G) includes no language indicating TTCO was responsible for conducting the extensive analysis necessary to create a cost report. *Id.* Nor does it mention that TTCO was responsible for retaining an auditor to review the cost report. *Id.* Rather, Section II(G) requires TTCO to convey to Springfield information about interim claims paid throughout the year. *Id.*

Beyond the plain text of the agreement, there is a more practical reason why Springfield's attempt to pin cost reporting responsibility solely on TTCO fails. The MSP regulatory structure does not permit providers like Springfield to fully outsource the cost reporting process. *See* Ohio Admin. Code § 5160-35-04(K)(2) ("The cost report is to be completed by the MSP provider in

10

compliance with all state and federal provisions the cost report instructions also developed by ODE"). At the very least, providers retain supervisory responsibility over cost report generation. *See* Ohio Admin. Code § 5160-35-04(K)(2). The MSP regulations make clear that it is the provider's duty to submit and certify the contents of cost reports. *See* Ohio Admin. Code § 5160-35-04(K)(2) ("Each MSP provider will complete the [ODE] developed MSP school based cost report"). Sample cost report forms created by ODM include a certification page to be completed by an officer of the provider. *See* doc. 36-1 at PageID 368, 373. Providers -- not their vendors -- are responsible for retaining a CPA to perform an AUP review of the cost report. *See* Ohio Admin. Code § 5160-35-04(K)(2) ("The MSP provider will contract with an independent certified public accountant (CPA) firm, the state auditor, or other entity authorized to conduct audits in the state of Ohio to perform an agreed upon procedures review of the cost report and document adjustments to the cost report"). Springfield's suggestion -- that TTCO should have submitted cost reports without collaboration with Springfield -- ignores the regulatory reality of the MSP cost reporting process.

**B.**

Next, TTCO argues that Springfield's negligence claim is barred by the economic loss doctrine. Doc. 36 at PageID 287. In opposition, Springfield requests that it be permitted to present a negligence claim to the jury as an alternative theory of recovery, although it acknowledges that it cannot recover damages for both a breach of contract and negligence claim arising from the same agreement. Doc. 39 at PageID 490. Springfield argues that it is custom and practice in Ohio for billing agents -- like TTCO -- to be responsible for cost reporting. *Id.* Therefore, Springfield contends, TTCO owed a duty of care to prepare and submit cost reports on its behalf, notwithstanding the Service Agreement. *Id.*

Springfield acknowledges that if it were to recover from TTCO under a negligence theory, it would be an exception to the economic loss doctrine. *Id.* at PageID 489. Ohio's economic loss doctrine provides that a party may not recover pure economic damages in a tort action absent some independent breach of a duty of care. *See Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). "'[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Id.* (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989)). "In other words, the economic loss doctrine bars only those tort claims in which a party seeks to recover the benefit of his bargain." *MedChoice Fin., LLC v. ADS Alliance Data Sys., Inc.*, 857 F. Supp. 2d 665, 671 (S.D. Ohio 2012). "This is so because 'the fundamental policy consideration underlying the economic loss rule -- the inevitable absence of a duty independent of that created by a contract in a negligence action for purely economic loss -- is missing in the intentional tort context, where duty is not an element of the claim.'" *Id.* (quoting *Reengineering Consultants, Ltd. v. EMC Corp.*, No. 2:08-cv-47, 2009 WL 113058, at *6 (S.D. Ohio Jan. 14, 2009)).

Under Ohio law, the existence of a duty of care is a legal question. *See, e.g.*, *Lacy v. Lennox Creek Condo. Ass'n*, 136 N.E.3d 914, 918 (Ohio Ct. App. 2019). Springfield cites no case law recognizing -- or even suggesting -- the existence of a duty of care between a billing agent and its clients separate and apart from those which may be set forth in a contract. *See* Doc. 39 at PageID 490. Instead, Springfield asks that it be permitted to bypass summary judgment scrutiny and present its negligence claim to the jury. *Id.* But, considering that Springfield has not established that TTCO owed it a duty of care independent of any contract between them, no reasonable jury could find Springfield is entitled to relief. *See, e.g.*, *Brosnan v. Heinen's, Inc.*, 99 N.E.3d 1081,

1084 (Ohio Ct. App. 2017) (citation omitted) (quotation marks omitted) ("There can be no legal liability in the absence of establishing the existence of a duty. . . . The analysis ends and no further inquiry is necessary").

## IV.

For the foregoing reasons, the Court: (1) **DISMISSES WITH PREJUDICE** Springfield's claims asserting unjust enrichment and fraud; (2) **GRANTS** TTCO's motion for summary judgment on Springfield's remaining claims; (3) **ORDERS** the Clerk to enter judgment accordingly; and (4) **TERMINATES** this case on the Court's docket.

**IT IS SO ORDERED.**

Date:  March 1, 2021 					s/Michael J. Newman
						Hon. Michael J. Newman
						United States District Judge